**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| VINCENT VAGHAR, <br><br>                          Plaintiff, <br><br>  -against- <br><br>BEGREAT SPORTS, LLC and BARRY GARDNER, <br><br>                         Defendants. | **COMPLAINT** <br><br> **Jury Trial Demanded** <br><br> Case No: 1:23-cv-3487 |

Plaintiff VINCENT VAGHAR hereby sues Defendants BeGreat Sports LLC and Barry Gardner and, in support, respectfully alleges as follows:

**PRELIMINARY STATEMENT**

1. This is a case about an unscrupulous businessman who engaged in a protracted scheme to line his own pockets and stave off collection efforts through fraudulent misrepresentations.

2. Quite simply, and worse yet, the victim of Defendants' scheme was a friend (Plaintiff) who graciously loaned Defendants money to support their fledgling sports agency. As repayment for Plaintiff's kindness and generosity, Defendant Barry Gardner ("BG"), by and through his company, Defendant BeGreat Sports LLC ("BeGreat") made countless false promises to repay the money but, instead, engaged in a proverbial "rob Peter to pay Paul" scheme with no intent to make good on his promises.

3. Defendants' failure, refusal, or inability to repay their debts is the result of a pattern of financial mismanagement and empty assurances that outstanding payments would be satisfied through an amalgamation of quick money solutions—none of which ever pan out.

4. Indeed, BG avoided his obligations to Plaintiff for years by providing false and misleading information about why he and his company could not make good on their debts while, at the same time, collecting commissions from professional athletes, living a life of luxury, and otherwise using Plaintiff's money for their own benefit.

5. Upon information and belief, Defendants never truly intended to repay the money Plaintiff loaned them. Instead, Defendants knew all along that they would ultimately refuse to repay Plaintiff in hopes that Plaintiff would forgive the debt and let bygones be bygones.

6. All told, Defendants nefariously created for themselves an approximately $900,000.00 windfall at Plaintiff's expense and continue to refuse to uphold their contractual obligations.

## THE PARTIES, JURISDICTION AND VENUE

7. This Court has diversity jurisdiction over the claims asserted in this Complaint pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties.

8. Plaintiff, at all times relevant to this action, resided and was domiciled in New York, New York. Plaintiff currently resides and is domiciled in Florida.

9. Defendant BG resides and is domiciled in Arizona.

10. Defendant BeGreat's sole member, BG, resides and is domiciled in Arizona.

11. The amount in controversy exceeds $75,000.00.

12. Venue is proper in the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(2), because a substantial portion of the events alleged herein were committed within this district.

## JURY TRIAL DEMAND

13. Plaintiff demands a trial by jury in this action on each and every one of his claims for which a jury trial is legally available.

## STATEMENT OF FACTS

### *Plaintiff and BG*

14. BG played football at Northwestern and was drafted by the Philadelphia Eagles in the second round of the 1999 NFL draft.

15. Plaintiff met BG through one of his teammates on the Philadelphia Eagles.

16. Plaintiff is an entrepreneur and businessperson but, most relevant to this action, he was BG's friend.

17. After BG's playing career in the NFL concluded, he founded and launched Defendant BeGreat, a "full-service sports agency" that purportedly "represent[s] athletes striving for greatness."

18. BG stated in an interview about his retirement from the NFL and transition to the sports agency business: "I was once in the young fellas' shoes, it was a no-brainer for me to combine my passions with a great cause—helping young men achieve their dreams."

19. BG lacked the capital to sufficiently fund BeGreat's operations and relied on loans to keep the business afloat and support his family.

20. BG regularly turned to Plaintiff as a lifeline when he was cash strapped and unable to satisfy his financial obligations. More specifically, BG solicited loans from Plaintiff on numerous occasions from 2016 through 2021.

21. Plaintiff's lending relationship with Plaintiff resulted in Defendants being indebted to Plaintiff in the amount of $888,550.00.

### *The Note*

22. On November 11, 2019, BG and BeGreat executed a promissory note wherein they promised to pay Plaintiff $845,268.97 by March 20, 2020 to satisfy Defendants' outstanding debt to Plaintiff (the "Note"). A copy of the Note is attached hereto as **Exhibit A**.

23. The Note specifically states, *inter alia*:

   a. Plaintiff is the "Payee", and that adequate consideration is received and recognized by BG and BeGreat;

   b. In the event of default, the entire unpaid principal balance, together with accrued and unpaid interest, shall become at once due and payable without notice or demand;

   c. BG and BeGreat are jointly and severally liable and waive the benefits of any statute of limitations, exemption and homestead rights provided by any federal or state statute; and

   d. Acceptance of less than the full amount due and payable shall not constitute a waiver of any right of Payee to require full payment of all sums due and payable under the Note.

24. After soliciting and accepting loans from Plaintiff and refusing to repay same, Defendants have signed a number of professional athletes to BeGreat as clients, including high profile NFL athletes like Indianapolis Colts running back Jonathan Taylor. *See* **Exhibit B**.

25. Upon information and belief, Defendants used funds it borrowed from Plaintiff to pay advances to athletes signed to BeGreat with no intent to repay Plaintiff—despite promising to repay Plaintiff in writing. Defendants' need to borrow funds from Plaintiff was a symptom of larger issues with BG and BeGreat's financial practices, and general lack of financial understanding or wherewithal, which often resulted in various financial shortfalls followed by loan requests directed to Plaintiff.

26. Defendants' financial desperation became apparent when in February 2021, during negotiations on repaying the Note, BG asked Plaintiff to pay off $22,000.00 of credit card debt. *See* **Exhibit C**. Plaintiff reluctantly agreed to pay the credit card debt in full.

27. BG thanked Plaintiff for paying off his credit cards and promised that "[m]aking sure you are paid out is the top priority." *Id.* But this was just another misrepresentation by BG to

4

delay action by Plaintiff. Nevertheless, BG confirmed and ratified the terms of the Note. *See* **Exhibit A**.

28. Despite Plaintiff's efforts to accommodate Defendants, they continue to refuse to pay the debt reflected in the Note. As a result, Plaintiff seeks remedies through this action.

## FIRST CAUSE OF ACTION
### Breach of Promissory Note against BG and BeGreat

29. Plaintiff repeats and realleges the allegations set forth in paragraphs 1-28 as if fully set forth herein.

30. All conditions precedent to bringing this action against Defendants have been satisfied or waived.

31. From August 2016 through August 2021, Plaintiff loaned Defendants money in the aggregate amount of approximately $910,050.00 with $888,550.00 still outstanding.

32. Plaintiff offered Defendants an opportunity to satisfy Defendants' debt to Plaintiff by way of a promissory note, dated November 11, 2019.

33. The Note required Defendants to pay Plaintiff $845,268.97 by March 20, 2020 to satisfy the outstanding debt.

34. Defendants failed to pay the $845,268.97 due under the note by March 20, 2020 and, as of the date of this filing, have not paid the $845,268.97 owed to Plaintiff.

35. Plaintiff suffered damages as a result of Defendants' breach including, but not limited to, an inability to access the funds he loaned to Defendants, opportunity costs arising out of Defendants' breach, and other damages to be determined during the course of this litigation.

36. Accordingly, Plaintiff demands judgment against Defendants, damages, attorney's fees and other costs incurred by Plaintiff, and any other and further relief this Court deems just and proper.

## SECOND CAUSE OF ACTION
### Unjust Enrichment against BG and BeGreat

37. Plaintiff repeats and realleges the allegations set forth in paragraphs 1-28 as if fully set forth herein.

38. Plaintiff conferred a benefit on Defendants by loaning them money from 2016 to 2021.

39. Defendants accepted, used, and continue to use the funds Plaintiff loaned them to operate BeGreat and to fund BG's personal life.

40. Defendants benefitted from the use of the loans by generating revenue from the operations of BeGreat that were funded by Plaintiff and by BG's personal use of the loans.

41. Defendants have declared an intention not to repay the loans and have been enriched at Plaintiff's expense.

42. Under these circumstances, it is against equity and good conscience to permit Defendants to retain the benefit of the loans without repaying the loan amounts to Plaintiff.

43. Accordingly, Plaintiff demands judgment against Defendants, damages, attorney's fees and other costs incurred by Plaintiff, and any other and further relief this Court deems just and proper.

## THIRD CAUSE OF ACTION
### Conversion against BG and BeGreat

44. Plaintiff repeats and realleges the allegations set forth in paragraphs 1-28 as if fully set forth herein.

45. From 2016 through 2021, Plaintiff loaned Defendants more than $850,000.00 by directly transferring money to Defendants by wire or other electronic transfer mechanisms.

46. Defendants had access to and possession of the funds.

47. Defendants agreed to repay Plaintiff for all of the loans they received from Plaintiff.

48. Now, Defendants refuse to reimburse Plaintiff for the amount Plaintiff loaned them.

49. Defendants, accordingly, are benefiting from over $855,000.00 (before interest) in unpaid loans, knowing that they do not have the right to possess, use, or control that capital because it belongs to Plaintiff.

50. Defendants have wrongfully exerted dominion and control over Plaintiff's loans for their own purposes and deprived Plaintiff of his right to possess the funds he is owed.

51. Plaintiff has demanded return of the loans.

52. Defendants refused and continue to refuse to return the outstanding loans.

53. Defendants do not have any lawful right to retain, attempt to retain, endeavor to use, or actually use the funds Plaintiff loaned them.

54. Defendants' wrongful actions resulted in damages to Plaintiff—including, *inter alia*, his inability to access and use funds he loaned to Defendants, which were due to be repaid in March 2020.

55. Accordingly, Plaintiff demands judgment against Defendants, damages, attorney's fees and other costs incurred by Plaintiff, and any other and further relief this Court deems just and proper.

### FOURTH CAUSE OF ACTION
**Fraudulent Misrepresentation against BG**

56. Plaintiff repeats and realleges the allegations set forth in paragraphs 1-28 as if fully set forth herein.

57. From the date the Note became due and payable, Defendant BG made false statements to Plaintiff for purposes of preventing Plaintiff from recovering the funds due under the Note and to deter Plaintiff from pursuing legal action to recover said funds.

58. More specifically, on or about January 30, 2022, Defendant BG stated via email to Plaintiff that he planned to repay the loan in "4 or 5 phases." *See* **Exhibit D**. In actuality, Defendant BG knew that he had no intent to repay the loan in 4 or 5 phases.

59. On or about August 28, 2022, Defendant BG stated via email to Plaintiff that he had a "plan [of] action" directed toward repaying Plaintiff. *See* **Exhibit B**. In that email, Defendant BG outlined, *inter alia*, various business transactions that were purportedly directed toward developing the liquidity necessary to repay Plaintiff. Defendant BG knew, however, that there was no true "plan of action" at the time and that the information in the email was false, misleading, and manufactured for purposes of deterring Plaintiff from taking action against Defendants to recover the amounts due under the Note.

60. Moreover, on or about August 14, 2021, Defendant BG told Plaintiff that he could repay $200,000.00 of the amount owed under the Note and sent Plaintiff a check in the amount of $200,000.00 that he knew would not clear. *See id.*

61. Defendant BG's representations were material and played a significant role in Plaintiff's decision to delay legal action against Defendants.

62. Plaintiff relied on Defendant BG's fraudulent misrepresentations and, as a consequence, took incremental steps toward recovering funds owed under the Note instead of pursuing his legal rights immediately.

63. Plaintiff's reliance on Defendant BG's false statements resulted in damages to Plaintiff's—including, *inter alia*, his inability to access and use the funds owed under the Note.

64. Accordingly, Plaintiff demands judgment against Defendants, damages, attorney's fees and other costs incurred by Plaintiff, and any other and further relief this Court deems just and proper.

## DEMAND FOR RELIEF

WHEREFORE, Plaintiff demands judgment against the Defendants for damages, attorney's fees, costs and any other relief this Court may deem appropriate.

Dated: New York, New York
April 26, 2023

**HAMILTON CLARKE, LLP**

By: s/ Philip C. Hamilton
Phillip C. Hamilton

48 Wall Street, Suite 1100
New York, New York 10005
PH@HamiltonClarkeLLP.com

**LOMAX LEGAL PLLC**

By: Christopher M. Lomax
Christopher Lomax (pro hac vice forthcoming)

95 Merrick Way, 3rd Floor
Coral Gables, FL 33134
Chris@LomaxLegal.com

*Attorneys for Plaintiff*