UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| VINCENT VAGHAR,<br><br>                              Plaintiff,<br><br>-against-<br><br>BEGREAT SPORTS, LLC and BARRY GARDNER,<br><br>                              Defendants. | No. 1:23-cv-03487 (JLR) (HJR)<br><br>**OPINION AND ORDER** |

JENNIFER L. ROCHON, United States District Judge:

Plaintiff Vincent Vaghar ("Vaghar" or "Plaintiff") brings this diversity action against Defendants BeGreat Sports, LLC ("BeGreat"), and Barry Gardner ("Gardner," together with BeGreat, "Defendants"), asserting claims for breach of a promissory note, unjust enrichment, conversion, and fraudulent misrepresentation in connection with an alleged loan transaction. *See generally* Dkt. 14 ("Compl."). Defendants assert two counterclaims against Plaintiff for abuse of process and tortious interference with business relations. *See generally* Dkt. 73 ("Second Amended Answer" or "SAA"). Plaintiff now moves to dismiss Defendants' counterclaims pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6) for failure to state a claim upon which relief can be granted. *See* Dkt. 78 ("Br."). For the reasons stated below, the Court GRANTS Plaintiff's motion and dismisses Defendants' two counterclaims.

## BACKGROUND

For purposes of resolving this motion, the Court accepts the factual allegations in Defendants' counterclaims as true and draws all reasonable inferences in Defendants' favor. *See, e.g.*, *CDC Newburgh Inc. v. STM Bags, LLC*, 692 F. Supp. 3d 205, 217 (S.D.N.Y. 2023); *Kingvision Pay-Per-View, Ltd. v. Falu*, No. 06-cv-04457 (JGK), 2008 WL 318352, at *1 (S.D.N.Y. Feb. 4, 2008). The Court also considers materials incorporated by reference in the

counterclaims "and documents that, although not incorporated by reference, are integral to the [pleading]." *Temple v. Hudson View Owners Corp.*, 222 F. Supp. 3d 318, 322 (S.D.N.Y. 2016) (quoting *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011)).

I.  **Factual Background**

Gardner is the "sole owner and manager" of BeGreat and has made "substantial capital investments" in the company. SAA ¶ 1. Vaghar is a "longtime investor" in BeGreat, *id.* ¶ 2, and "has made various capital investments in BeGreat over the course of several years," *id.* ¶ 3.

In 2019, Vaghar learned that BeGreat was "having discussions with additional potential investors who were planning on infusing a substantial amount of capital into BeGreat." *Id.* ¶ 5. At Vaghar's insistence, the parties agreed that on receipt of the anticipated infusion of capital, Vaghar's investment in BeGreat would be repaid prior to Gardner's investment. *See id.* ¶¶ 6-7. In November 2019, the parties engaged in negotiations to "execute a promissory note in favor of Plaintiff to effectuate [their] agreement" regarding the repayment of their investments. *Id.* ¶¶ 8-9; *see also* Dkt. 73-1. "Defendants were not represented by counsel during any of these negotiation communications." SAA ¶ 10.

On November 12, 2019, Gardner emailed an executed promissory note to Vaghar that "listed [BeGreat] as the only debtor," *id.* ¶ 12; *see* Dkt. 73-1; Dkt. 73-2. Later that day, Vaghar emailed Gardner "a redlined version of the same promissory note that was modified to reflect both BeGreat and [Gardner] (in his personal capacity) as co-debtors under the note," among other changes. SAA ¶ 13; *see* Dkt. 73-3. Subsequently, Gardner, on behalf of BeGreat, "execute[d] the modified version of the promissory note . . . with the express intention that [he] would not be personally bound by the terms of the note," SAA ¶ 14, and returned it to Vaghar by email, *id.* ¶ 15; *see* Dkt. 73-4. "[T]o ensure that the note was not

2

enforceable against [him] personally," Gardner signed only the signature line for BeGreat, leaving blank the signature line for Gardner in his individual capacity. SAA ¶ 15.

Based on Vaghar's representations, BeGreat's understanding when executing the revised promissory note was that it served only "to ensure that Plaintiff's investment in BeGreat was repaid before [Gardner]'s investment in BeGreat was repaid," *id.* ¶ 19, and "that it would only be enforceable if BeGreat finalized the deal to bring on the new investors and received their capital infusion," *id.* ¶ 20; *see also id.* ¶ 21 ("Consistent with this further understanding, the parties chose a maturity date of March 20, 2020 specifically to coincide with BeGreat's anticipated receipt of the capital infusion from the new investors."). However, "[t]he deal with new potential investors was never finalized, and BeGreat never received the expected capital infusion." *Id.* ¶ 22.

Several years later, in or around November 2022, "a series of attorneys/debt collectors began contacting Defendants to secure repayment of the promissory note." *Id.* ¶ 24. Then, in April 2023, Gardner received a letter from Vaghar's counsel informing him that Vaghar would "immediately proceed with filing [his] lawsuit" if he did not receive a "written commitment" to "repay the loan amount and associated fees by a date certain," or "something substantially similar." Dkt. 73-5; *see* SAA ¶ 25. In the letter, Vaghar's counsel threatened to "provide a copy" of the lawsuit to the NFL Players Association (the "NFLPA"), SAA ¶ 25 — "the union for [Defendants'] professional athlete clients," *id.* ¶ 45 — and to "issue a press release announcing the filing of the lawsuit and circulate the same to all major media outlets," Dkt. 73-5.

On April 26, 2023, Vaghar proceeded to file the instant suit, *see* Dkt. 1, and the next day, a "self-described sports reporter" posted about the filing, which was "reposted by others," SAA ¶ 26; *see* Dkt. 73-6; Dkt. 73-7. Subsequently, "BeGreat lost several of its

3

clients, including its biggest client, within one month of the filing of this lawsuit," SAA ¶ 27, and "had its reputation tarnished with the NFLPA," *id.* ¶ 47; *see also id.* ¶ 28 ("The biggest client that BeGreat lost as a direct result of Plaintiff's actions signed a new player contract mere months after terminating its relationship with BeGreat that would have been very lucrative to BeGreat." (footnote omitted)).

Defendants allege that "the version of the promissory note attached to the Complaint which includes [Gardner]'s signature in his personal capacity is a forged, falsified and/or altered document," *id.* ¶ 18, because Gardner "never affixed his electronic signature — or authorized his electronic signature to be affixed — to any version of any promissory note in favor of Plaintiff," *id.* ¶ 17.  Accordingly, Defendants argue that Vaghar initiated the Complaint based on a fraudulent promissory note, *see* Dkt. 14-1, with the "intent to harm" Gardner and his business, SAA ¶ 40, and "to pressure [them] into making payments," *id.* ¶ 42.

## II.     Procedural History

On April 26, 2023, Plaintiff filed his Complaint, seeking damages in connection with Defendants' alleged refusal to fulfill the terms of the promissory note attached to the Complaint.  *See* Dkt. 1.  On January 11, 2024, Defendants filed their answer, *see* Dkt. 48, which they amended on April 30, 2024, to assert two counterclaims against Plaintiff for abuse of process and tortious interference with business relations, *see* Dkt. 71.  Plaintiff moved to dismiss the counterclaims on May 21, 2024, *see* Dkt. 72, after which Defendants filed their Second Amended Answer on June 6, 2024, *see* SAA, mooting Plaintiff's motion, *see* Dkt. 74.  The Second Amended Answer asserted the same two counterclaims, but with the addition of several supporting exhibits.  *See generally* SAA.

On June 21, 2024, Plaintiff filed the instant motion to dismiss Defendants' amended counterclaims pursuant to Rule 12(b)(6) for failure to state a claim for relief.  *See generally*

4

Br. On July 2, 2024, Defendants filed a response in opposition to Plaintiff's motion, Dkt 79 ("Opp."), and on July 9, 2024, Plaintiff filed a reply in further support of his motion, Dkt. 81 ("Reply").

### III. Legal Standard

Under Rule 12(b), "a motion to dismiss a counterclaim is evaluated under the same standard as a motion to dismiss a complaint." *Ohr Somayach/Joseph Tanenbaum Educ. Ctr. v. Farleigh Int'l Ltd.*, 483 F. Supp. 3d 195, 202 (S.D.N.Y. 2020) (quoting *Gerdau Ameristeel U.S. Inc. v. Ameron Int'l Corp.*, No. 13-cv-07169 (LGS), 2014 WL 3639176, at *2 (S.D.N.Y. July 22, 2014)). To survive a motion to dismiss under Rule 12(b)(6), a pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007)). On a Rule 12(b)(6) motion, the court must "accept all factual allegations as true and draw all reasonable inferences in the [opposing party]'s favor." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 110-11 (2d Cir. 2010) (alterations adopted) (quoting *Shomo v. City of New York*, 579 F.3d 176, 183 (2d Cir. 2009)). The court shall not "accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

### DISCUSSION

### I. Choice of Law

While the parties do not brief choice of law, they both appear to agree that New York law applies. *See* Br. at 6; Opp. at 2. "In diversity actions, federal courts follow the choice-of-law rules of the forum state to determine the controlling substantive law." *Feldman Law Grp. P.C. v. Liberty Mut. Ins. Co.*, 819 F. Supp. 2d 247, 255 (S.D.N.Y. 2011) (footnote omitted), *aff'd*, 476 F. App'x 913 (2d. Cir. 2012) (summary order). "However, where the parties have

agreed to the application of the forum law, their consent concludes the choice of law inquiry." *PetEdge, Inc. v. Garg*, 234 F. Supp. 3d 477, 486 (S.D.N.Y. 2017) (quoting *Am. Fuel Corp. v. Utah Energy Dev. Co.*, 122 F.3d 130, 134 (2d Cir. 1997)). If "[t]he parties' briefs assume that New York substantive law governs the issues . . . such implied consent is . . . sufficient to establish the applicable choice of law." *Arch Ins. Co. v. Precision Stone, Inc.*, 584 F.3d 33, 39 (2d Cir. 2009) (quoting *Golden Pac. Bancorp v. FDIC*, 273 F.3d 509, 514 n.4 (2d Cir. 2001)).

Because the parties' briefs rely on and indicate their assent to the application of New York law, and the Court has not identified a strong countervailing public policy, the Court will apply New York law to the abuse-of-process and tortious-interference claims at issue here. *See PetEdge*, 234 F. Supp. 3d at 486 (applying New York law where party implicitly consented by citing exclusively to New York law); *accord Heath v. EcoHealth All.*, No. 23-cv-08930 (JLR), 2024 WL 5168072, at *3 (S.D.N.Y. Dec. 19, 2024) (citing *PetEdge*, 234 F. Supp. 3d at 486).

## II. The Motion to Dismiss

Plaintiff seeks dismissal, pursuant to Rule 12(b)(6), of Defendants' two counterclaims for abuse of process and tortious interference with business relations, arguing that they fail to state a claim upon which relief can be granted. *See generally* Br. As set forth below, the Court finds that Defendants have failed to state a claim for either abuse of process or tortious interference with business relations.

### A. Abuse of Process

Plaintiff argues that Defendants' abuse-of-process counterclaim should be dismissed because the process relied upon is Plaintiff's filing of the summons and complaint in this action, which is insufficient to state a claim for relief under New York Law. Br. at 6. The Court agrees with Plaintiff.

6

Under New York law, an "abuse-of-process claim lies against a defendant who (1) employs regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse of justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process." *Savino v. City of New York*, 331 F.3d 63, 76 (2d Cir. 2003) (quoting *Cook v. Sheldon*, 41 F.3d 73, 80 (2d Cir. 1994)); *accord Blanco v. Success Acad. Charter Schs., Inc.*, 722 F. Supp. 3d 187, 223 (S.D.N.Y. 2024) (same).

Defendants' abuse-of-process counterclaim fails at the first step because "the institution of a civil action by summons and complaint is not legally considered process capable of being abused." *HC2, Inc. v. Delaney*, 510 F. Supp. 3d 86, 106 (S.D.N.Y. 2020) (quoting *Curiano v. Suozzi*, 469 N.E.2d 1324, 1326 (N.Y. 1984)). "The action [for abuse of process] is not for the wrongful bringing of an action or prosecution, but for the improper use, or rather abuse, of process in connection therewith." *Zappin v. Cooper*, No. 23-165, 2024 WL 3084015, at *2 (2d Cir. June 21, 2024) (summary order) (quoting *Hauser v. Bartow*, 7 N.E.2d 268, 373 (N.Y. 1937)). "[L]egal process means that a court issued the process, and the plaintiff will be penalized if he violates it." *Cook*, 41 F.3d at 80 (citing *Mormon v. Baran*, 35 N.Y.S.2d 906, 909 (Sup. Ct. 1942)). "It follows that there must be an unlawful interference with one's person or property under color of process in order that action for abuse of process may lie," *HC2, Inc.*, 510 F. Supp. 3d at 106, and "no such interference flows from the issuance of a civil summons," *Manhattan Enter. Grp. LLC v. Higgins*, 816 F. App'x 512, 514 (2d Cir. 2020) (summary order). Examples of legal process that "can be so abused include writs of 'attachment, execution, garnishment, or sequestration proceedings, or arrest of the person, or criminal prosecution, or even such infrequent cases as the use of a subpoena for the collection of a debt.'" *Blanco*, 722 F. Supp. 3d at 223-24 (quoting *HC2, Inc.*, 510 F. Supp. 3d

7

at 106). Defendants have not alleged that Plaintiff has abused any such legal process that has interfered with Defendants' person or property; rather, Defendants' counterclaim for abuse of process is based on "[P]laintiff's service of a summons and complaint," which, "[a]s a matter of law, . . . even if made with malicious intent, is insufficient to state a cause of action for abuse of process." *Hetchkop v. Eve Concrete Corp.*, No. 92-cv-04137 (LBS), 1993 WL 78073, at *2 (S.D.N.Y. Mar. 18, 1993) (quoting *Stroock & Stroock & Lavan v. Beltramini*, 550 N.Y.S.2d 337, 338 (App. Div. 1990))); *accord Perry v. Manocherian*, 675 F. Supp. 1417, 1429 (S.D.N.Y. 1987) ("A claimant must show that the process issued interfered with his person or property, such as by attachment or arrest. Defendants have made no such showing, but have merely claimed that the action was brought maliciously to coerce a settlement and to create bad publicity . . . ." (citing *Curiano*, 469 N.E.2d at 1326)).

Defendants argue that they have satisfied this first prong because their counterclaims "contain allegations of Plaintiff's actions which go well beyond him simply filing a lawsuit." Opp. at 5; *see, e.g.*, SAA ¶ 38 ("Plaintiff forged, falsified and/or altered the promissory note attached to the Complaint to include [Gardner's] signature despite having no authorization to do so and despite knowing that [Gardner] never agreed to be bound personally by the promissory note."). However, none of these allegations demonstrate that the purportedly fraudulent note was used to "obtain[] any court-issued process" that interfered with Defendants' person or property, *Blanco*, 722 F. Supp. 3d at 224 (emphasis omitted), such as attachment or garnishment. *Cf. Riddell Sports Inc. v. Brooks*, 872 F. Supp. 73, 79 (S.D.N.Y. 1995) (dismissing abuse-of-process claim notwithstanding claimants' argument that their counterclaim was "not based on the mere filing of a summons and complaint, but rather. . . on counterdefendants' improper and unlawful use of judicial process to harass [them]").

Defendants have therefore failed to plead a claim for abuse of process, and the Court dismisses this counterclaim.

### B. Tortious Interference with Business Relations

Plaintiff next argues that Defendants' counterclaim for tortious interference with business relations should be dismissed for failure to state a claim because Defendants have not pleaded facts to show that Plaintiff's suit is frivolous or that it was brought with a solely malicious motive. *See* Br. at 7-8; Reply at 4-5.[1]  Defendants argue that Plaintiff filed an action based on an altered document and acted maliciously by identifying Defendants' biggest client in the Complaint to enhance the newsworthiness of the lawsuit, and that Defendants thereafter lost that client. Opp. at 6. The Court finds that Defendants have not stated a claim for relief.

"To state a claim for this tort under New York law, four conditions must be met: (1) the plaintiff had business relations with a third party; (2) the defendant interfered with those business relations; (3) the defendant acted for a wrongful purpose or used dishonest, unfair, or improper means; and (4) the defendant's acts injured the relationship." *Catskill Dev., L.L.C. v. Park Place Ent. Corp.*, 547 F.3d 115, 133 (2d Cir. 2008) (Sotomayor, J.) (citing *Lombard v. Booz–Allen & Hamilton, Inc.*, 280 F.3d 209, 214 (2d Cir. 2002); *Goldhirsh Grp., Inc. v. Alpert*, 107 F.3d 105, 108-09 (2d Cir. 1997)); *accord Pride Techs., LLC v.*

---

[1] Plaintiff raises several other arguments related to Defendants' contracts with third parties. However, Defendants correctly observe that Plaintiff's opening brief appears to conflate two distinct torts: tortious interference with a contract and tortious interference with business relations. *See* Br. at 8 (listing and applying the elements "for tortious interference with a contract" (quoting *Splash, LLC v. Shullman Fam. Ltd. P'ship*, 51 N.Y.S.3d 852, 859 (Sup. Ct. 2017))). Although there is some overlap, "[a] claim for tortious interference with prospective business relations" applies "a different, and more stringent, standard than a claim for interference with a binding contract." *RBG Mgmt. Corp. v. Vill. Super Mkt., Inc.*, 692 F. Supp. 3d 135, 149 (S.D.N.Y. 2023).

*Khublall*, No. 21-2225, 2022 WL 17587755, at *1 (2d Cir. Dec. 13, 2022) (summary order). To summarize Defendants' allegations as applied to these elements, Defendants argue that: (1) Defendants had business relationships with various professional-athlete clients, SAA ¶ 45; (2) Plaintiff intentionally interfered with those relationships by filing this action and circulating the Complaint, which identified Defendants' biggest client by name, to the media and the NFLPA, *id.* ¶¶ 25, 45; Opp. at 6; (3) Plaintiff included Defendants' biggest client's name in the Complaint to enhance the newsworthiness of the action, and the "action [is] predicated on a forged, falsified and/or altered document," SAA ¶ 45; *see* Opp. at 6; and (4) "as a direct result . . . BeGreat lost several of its professional athlete clients, including its biggest client, and had its reputation tarnished with the NFLPA," SAA ¶ 47.

Focusing on the third element, to maintain a tortious-interference-with-business-relations claim, Defendants must adequately allege that Plaintiff "acted for a wrongful purpose or used dishonest, unfair, or improper means" to interfere with Defendants' business relationships. *16 Casa Duse, LLC v. Merkin*, 791 F.3d 247, 262 (2d Cir. 2015) (quoting *Catskill Dev., L.L.C.*, 547 F.3d at 132). The "'wrongful means' element sets a high bar," and generally requires a showing that the interfering conduct "amount[ed] to a crime or an independent tort," or served "the sole purpose of inflicting intentional harm" on the claimant. *Id.* (quoting *Carvel Corp. v. Noonan*, 818 N.E.2d 1100, 1103 (N.Y. 2004)). Even though Plaintiff's Complaint alleges less than favorable things about the Defendants' financial practices and includes the name of one of Defendants' clients, Plaintiff's filing of a public lawsuit against the Defendants and alleged circulation of the lawsuit do not constitute wrongful means here. Defendants do not argue that they have pleaded facts sounding in a crime or independent tort. Defendants also do not plausibly allege that Plaintiff's claims are "frivolous, objectively unreasonable, or patently meritless" such that Plaintiff's sole intention

10

in filing this action was to inflict harm on Defendants. *Id.* at 263 (rejecting tortious interference with business relations claim because no wrongful means found where litigation filed was not "frivolous, objectively unreasonable, or patently meritless"). Nor could they — Defendants do not deny the existence of some form of loan agreement between at least Plaintiff and Defendant BeGreat, *see* SAA ¶¶ 6-8, 11-12, 14, and Plaintiff initiated this action, at least in part, to recover loan payments under the disputed terms of that agreement, *see generally* Compl., which is a facially legitimate reason to bring a lawsuit. *See Travelex Currency Servs., Inc. v. Puente Enters., Inc.*, 449 F. Supp. 3d 385, 402 (S.D.N.Y. 2020) ("If a respondent has acted 'with a permissible purpose, such as normal economic self-interest, wrongful means have not been shown.'" (quoting *16 Casa Duse, LLC*, 791 F.3d at 262)); *Herrick Co. v. Vetta Sports, Inc.*, No. 94-cv-00905 (RPP), 1996 WL 434571, at *5 (S.D.N.Y. Aug. 2, 1996) (dismissing counterclaim for tortious interference with business relations where plaintiff's filing and circulation of a lawsuit "d[id] not appear to be 'wrongful,' but rather an effort to protect his economic self-interest and what he reasonably perceived as a legal right"). *Compare CapLOC, LLC v. McCord*, No. 17-cv-05788 (AT), 2018 WL 3407708, at *6 (S.D.N.Y. June 12, 2018) (dismissing counterclaim for tortious interference with business relations based on the filing of a lawsuit where defendant failed to plead facts supporting an inference that plaintiff's action was filed "frivolously" or "solely in bad faith and not, at least partially, to advance its economic interest"), *with Ortiz v. Todres & Co.*, No. 15-cv-01506 (LGS), 2018 WL 1626140, at *3 (S.D.N.Y. Mar. 30, 2018) (upholding counterclaim for tortious interference with business relations based on the filing of a lawsuit where defendant alleged that plaintiff's action was filed with "no basis in fact or evidence" and "without making any demands on the [defendant] and standing to gain nothing financially").

The only other wrongful means or conduct that Defendants allege is that Plaintiff attached "a forged, falsified and/or altered document" to the Complaint. SAA ¶¶ 45-47. Even assuming that Plaintiff attached an exhibit that contains a false signature by Gardner, Defendants must plead facts showing that this allegedly false document was wrongful conduct that caused the loss of a prospective business relationship. *See State St. Bank & Tr. Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 171 (2d Cir. 2004) ("[D]efendants cannot prevail on their tortious interference counterclaim unless they 'demonstrate *both* wrongful means *and* that the wrongful acts were the *proximate cause* of the rejection of the plaintiff's proposed contractual relations.'" (quoting *Pacheco v. United Med. Assoc., P.C.*, 759 N.Y.S.2d 556, 559 (App. Div. 2003))). The Court finds that Defendants have not alleged facts to support this inference. "In showing proximate causation, a plaintiff seeking to recover for tortious interference with prospective business relations must show 'that a contract would have been entered into with a prospective [relation] "but for" defendant's conduct.'" *Unicorn Crowdfunding, Inc. v. New St. Enter., Inc.*, 507 F. Supp. 3d 547, 570 (S.D.N.Y. 2020) (alteration in original) (quoting *Parrott v. Logos Cap. Mgmt., LLC*, 936 N.Y.S.2d 194, 195 (App. Div. 2012)). In other words, a "defendant's wrongful conduct against third-parties [must bear] a direct nexus to the relationship with which the defendant interfered." *Pride Techs., LLC*, 2022 WL 17587755, at *1 (alteration in original) (quoting *Catskill Dev., L.L.C.*, 547 F.3d at 133).

In this case, the "alleged fraud 'ha[s] at most a tenuous relation to the harm alleged,'" which "fails to show causation." *Id.* (alteration in original) (quoting *Catskill Dev., L.L.C.*, 547 F.3d at 133). Defendants do not allege or plead facts to support the inference that their former clients relied on the allegedly forged note in deciding to terminate their business relationships with Defendants. *Cf. Catskill Dev., L.L.C.*, 547 F.3d at 134 (rejecting claim for

tortious interference with business relations where third parties "did not rely" on defendants' alleged fraud). If Plaintiff had filed and publicized a substantially similar complaint that did not attach or reference the allegedly forged note, Defendants' clients (including the client named in the lawsuit) would likely still have become aware of the loan dispute overall and the various allegations in Plaintiff's Complaint that describe Defendants' alleged failure to pay their debts and financial mismanagement. *See, e.g.*, Compl. ¶¶ 3-4. Defendants have thus not plausibly alleged that Plaintiff's filing and publication of the Complaint with an exhibit attached that included Gardner's allegedly forged signature was the proximate or but-for cause of Defendants' loss of clientele or reputation.

For these reasons, Defendants have not pleaded sufficient factual matter to state a claim for tortious interference with business relations under New York law.

## CONCLUSION

Plaintiff's motion to dismiss Defendants' counterclaims for abuse of process and tortious interference with business relations is GRANTED. The Clerk of Court is respectfully directed to terminate the motions pending at Dkts. 76 and 78.

Dated: January 22, 2025
      New York, New York

                                         SO ORDERED.

*Jennifer Rochon*
JENNIFER L. ROCHON
United States District Judge